UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FELICITA BURGOS,

     Plaintiff,

v.                         CASE NO. 6:17-cv-623-Orl-37MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

     Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative

decision denying her applications for a period of disability, Disability Insurance

Benefits ("DIB"), and Supplemental Security Income ("SSI") payments.  On April

22, 2013, Plaintiff applied for DIB and SSI payments alleging that she became

disabled on April 3, 2013.  (Tr. 213-22.)  Plaintiff's claims were denied initially and

on reconsideration.  A hearing was held before the assigned Administrative Law

Judge ("ALJ") on July 14, 2015, at which Plaintiff was represented by an attorney.

(Tr. 43-71.)  At the hearing, Plaintiff amended her onset date to February 8, 2012.

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.*  A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made.  *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; M.D. Fla. R. 6.02.

(Tr. 48-49.) However, on July 23, 2015, almost three (3) months before the ALJ rendered a decision, Plaintiff sent written correspondence to the ALJ rescinding her amended onset date and requesting the ALJ to reinstate her original alleged onset date of April 3, 2013. (Tr. 337.) The ALJ issued an unfavorable decision on November 9, 2015, finding Plaintiff not disabled from February 8, 2012, the amended onset date, through November 9, 2015, the date of the decision. (Tr. 21-37.)

Plaintiff is appealing the Commissioner's decision that she was not disabled during the relevant time period. Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. The undersigned has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the undersigned respectfully **RECOMMENDS** that the Commissioner's decision be **REVERSED and REMANDED**.

## I.     Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir.

2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.   Discussion

Plaintiff argues two general points on appeal.  First, Plaintiff argues that the ALJ failed to properly weigh the opinions of Plaintiff's treating physician, Gregory Munson, M.D.  Specifically, Plaintiff contends that the ALJ failed to articulate good cause for discounting Dr. Munson's opinions.  Second, Plaintiff contends that the ALJ erred by devising a mental residual functional capacity ("RFC") determination without supporting evidence and without ordering a consultative examination or re-contacting Plaintiff's treating psychiatrist.  Defendant argues that the ALJ's evaluation of the medical opinions of record is clearly articulated and supported by substantial evidence.  Defendant also argues that the ALJ properly evaluated Plaintiff's mental RFC.

3

### A.   Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3).  With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5) specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518

4

(11th Cir. 1984) (per curiam); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), "[t]he

opinions of state agency physicians" can outweigh the contrary opinion of a

treating physician if "that opinion has been properly discounted," *Cooper v.*

*Astrue*, No. 8:06-cv-1863-T-27TGW, 2008 WL 649244, at *3 (M.D. Fla. Mar. 10,

2008).  Further, "the ALJ may reject any medical opinion if the evidence supports

a contrary finding."  *Wainwright v. Comm'r of Soc. Sec. Admin.*,  No. 06-15638,

2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v.*

*Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining state

agency medical and psychological consultants because they 'are highly qualified

physicians and psychologists, who are also experts in Social Security disability

evaluation.'"  *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. May 2, 2008)

(per curiam); s*ee also* SSR 96-6p (stating that the ALJ must treat the findings of

State agency medical consultants as expert opinion evidence of non-examining

sources).  While the ALJ is not bound by the findings of non-examining

physicians, the ALJ may not ignore these opinions and must explain the weight

given to them in his decision.  SSR 96-6p.

### B.    The Hearing and ALJ's Decision

At the beginning of the July 14, 2015 hearing, the ALJ acknowledged

Plaintiff's attempt to amend her alleged onset date from April 3, 2013 to February

8, 2012.  (Tr. 49 ("Q. Okay.  Looking back at the Change of Onset Form, the

Claimant has amended the onset date to February 8th, 2012.  And this form has

been signed by both the Claimant and the Claimant's attorney.  Counsel, is that

information correct?").)  Later during the hearing, however, the ALJ recognized

the lack of clarity as to Plaintiff's earnings history subsequent to her amended

onset date.  Specifically, Plaintiff testified that she returned to work after knee

surgery in February 2012, but that she was also earning short-term disability

payments during that time.  (Tr. 52-53.)  The following colloquy took place:

> ALJ: Counsel, the earnings reported for 2012 and 2013–
> ATTY: Yes.
> ALJ: – I need to have that clear.
> ATTY: Okay.  I'm trying.
> ALJ: Yeah.  But anyway, I don't see any documentary
> evidence with regard to the short-term disability, so we
> would need that.  But as to how far she worked, that's
> something that really must be clear.
> ATTY: Okay.  We will get that information about the
> short-term disability.  Okay.  So moving ahead.

(Tr. 53-54.)  At the end of the hearing, the following exchange occurred:

> ALJ: Okay.  Now, counsel, I – this is an age case.  I'm
> going to give the Claimant ten days to submit
> information about the short-term disability.
> ATTY: Okay.
> ALJ: Okay.
> ATTY: *And if we can't get it, we – for whatever reason,*
> *we'll unamend the onset* [*date*].

(Tr. 70 (emphasis added).)  On July 23, 2015, nine (9) days after the hearing,

Plaintiff's counsel sent written correspondence to the ALJ stating the following in

pertinent part:

> At the hearing, Claimant amended her original onset
> date of April 3, 2013 to February 8, 2012.  The
> documentation received from her Short-Term Disability
> carrier, however, does not support an earlier onset.
> *Therefore, she rescinds her request and asks that you
> reinstate the original alleged onset date*.

(Tr. 337 (emphasis added).)

Nevertheless, the ALJ found that Plaintiff "has not engaged in substantial gainful activity ("SGA") since February 8, 2012, the [rescinded] onset date."  (Tr. 23 (definition supplied).)  In making this finding, the ALJ made no mention of the July 23, 2015 correspondence rescinding the amended onset date, but, in direct contradiction to his finding, stated that "[Plaintiff did] work[] after the alleged disability onset date and these earnings did arise to [SGA]."  (Tr. 23.)  The ALJ further stated that he is "hard-pressed to understand the earlier onset [date] because the record showed substantial earnings after the amended alleged onset date of February 8, 2012," and noted that Plaintiff continued working until April of 2013.  (*Id*.)  The ALJ concluded that "[a]lthough th[ere] appears to be [SGA] after her amended onset date of February 8, 2012, [he] will proceed to the next step."  (Tr. 24.)

In doing so, the ALJ found Plaintiff had severe impairments, including "back disorder (status post lumbar fusion; lumbosacral radiculopathies); bilateral knee torn medial meniscus (status post ACL reconstruction); obesity; depression; and anxiety."  (Tr. 24 (internal citations omitted).)  At step three in the evaluation

7

process, the ALJ found that Plaintiff does not have an impairment or combination

of impairments that meets or medically equals the severity of one of the listed

impairments in  20 C.F.R., Part 404, Subpart P, Appendix 1.  (*Id*.)

At step four, the ALJ made the following RFC determination:

> After careful consideration of the entire record, I find that
> the claimant has the [RFC] to perform sedentary work
> as defined in 20 CFR 404.1567(b) and 416.967(b).
> Specifically, she can lift, carry, push and/or pull ten (10)
> pounds occasionally.  She can stand and walk for about
> four (4) hours and sit for up to four (4) hours in an 8-
> hour workday with normal breaks.  She could
> occasionally climb stairs, balance, stoop, kneel, crouch,
> and crawl, but should never climb ladders or scaffolds.
> Her work is limited to simple routine and repetitive tasks.

(Tr. 25.)  In making this finding, the ALJ gave "little weight" to the opinions of

Plaintiff's treating orthopedist, Gregory Munson, M.D.  (Tr. 34.)  In discounting Dr.

Munson's opinions that Plaintiff should not perform any lifting and that she should

stand and sit less than fifteen (15) minutes at one time, the ALJ reasoned:

> Accordingly, I accord little weight to Dr. Munson's
> limitations; however, these limitations appear at the
> request of the claimant as prior to this, Dr. Munson was
> happy that she could return to work.  Moreover, it was
> noted that she collected unemployment and wanted to
> return to work in September 2014.

(*Id.*)

With respect to Plaintiff's subjective statements regarding limitations and

pain, the ALJ found that Plaintiff's "medically determinable impairments could

reasonably be expected to cause the alleged symptoms; however, [Plaintiff's]

statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 32.)

With the benefit of testimony from a vocational expert, the ALJ determined that Plaintiff was not capable of performing her past relevant work, but that she could perform work that exists in significant numbers in the national economy, including the jobs of toll collector, ticket seller, and assembler.  (Tr. 35-36.)  As such, the ALJ found that Plaintiff was not disabled from February 8, 2012 through the date of the decision.  (Tr. 37.)

### C.    The Decision is Not Supported by Substantial Evidence

At the outset, the undersigned is troubled by the ALJ's confusing step one finding.  The ALJ found that Plaintiff *did not* engage in SGA since February 8, 2012, yet noted in the very next sentence that her earnings after February 8, 2012 *did arise* to SGA.  (Tr. 23.)  The ALJ was "hard-pressed to understand the earlier onset [date] because the record showed substantial earnings after . . . February 8, 2012" (*id*.), but ignored Plaintiff's counsel's testimony and the July 23, 2015 correspondence, ultimately notifying the ALJ that the original onset date (April 3, 2013) was the correct onset date (Tr. 70, 337).  While the ALJ is not required to adopt Plaintiff's alleged onset date, *see Moncrief v. Astrue*, 300 F. App'x 879, 880-81 (11th Cir. 2008) ("Although a claimant's alleged onset date is the starting point for determining the disability onset date, the ALJ need not adopt

that date if it is unsupported by the medical evidence."), the ALJ is required to develop a full and fair record, consider probative evidence favoring Plaintiff's position, and clearly explain how his onset date was chosen, *see, e.g., Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) (holding that the ALJ has "a basic duty to develop a full and fair record"); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) ("Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'"); *Alomar v. Comm'r of Soc. Sec.*, No. 6:11-cv-1328-Orl-DAB, 2012 WL 3609854, at *3-5 (M.D. Fla. Aug. 22, 2012) (remanding to the Commissioner because the ALJ did not provide a clear explanation as to how the onset date was chosen").

The ALJ ignored Plaintiff's request to restore her original alleged onset date of April 3, 2013 and failed to provide a clear explanation as to why he considered February 8, 2012 to be the appropriate onset date.  Indeed, the ALJ's explanation detailed why February 8, 2012 was *not* the appropriate onset date, but the ALJ nevertheless proceeded in the sequential disability evaluation.  The ALJ's failure to clearly explain the onset date in light of the record evidence constitutes error.

The Commissioner apparently concedes the ALJ's error in this regard

(Doc. 22 at 3 (indirectly addressing the issue by stating "Plaintiff alleged that she could not perform any [SGA] *beginning on April 3, 2013* due to low back pain, bilateral knee problems, obesity and depression/anxiety") (emphasis added)), but argues that substantial evidence still supports the ALJ's decision.  However, as noted by Plaintiff, and as explained below, the ALJ's error at step one tainted his RFC determination, including his analysis of Dr. Munson's opinions.

The ALJ appeared to provide Plaintiff the benefit of the doubt by proceeding with the February 8, 2012 onset date when his review of the record showed she performed SGA after the date.  (Tr. 23 ("Though this appears to be [SGA] after her amended onset date of February 8, 2012, I will proceed to the next step.").)  However, the ALJ used Plaintiff's work history between that date and April 3, 2013 (her original alleged onset date) to discredit her testimony and the opinions of Dr. Munson.  (*Id.* ("However, her earnings and unemployment will be further evaluated in the analysis below.").)  For example, when analyzing Plaintiff's subjective complaints of pain, the ALJ reasoned that "[t]he consultative evaluation with Dr. Perdomo in October 2013 showed she reported that she was able to continue working at a warehouse and worked until April 2013, further discrediting the claimant's representatives [sic] allegations that she had not worked since the amended onset date of February 2012."  (Tr. 33 (internal citation omitted).)  Moreover, the ALJ accorded little weight to the restrictions set forth by Dr. Munson on April 22, 2013 (shortly after her original onset date)

11

because "the[] limitations appear at the request of the claimant as *prior to this*, Dr. Munson, [sic] *was happy that she could return to work*." (Tr. 34 (emphasis added).)

Dr. Munson performed back surgery on Plaintiff in the form of a lumbar decompression, discectomy, and fusion in February 2010. (Tr. 381.) At the time, Plaintiff was diagnosed with disc herniations at L5-S1. (*Id*.) Plaintiff improved after surgery and returned to work. (*Id*.) Plaintiff was then involved in a motor vehicle accident and started experiencing increased pain and numbness in her left leg. (*Id*.) She underwent an MRI in October of 2011, which showed some stenosis and disc bulging at L4-L5. (Tr. 401.) She returned to Dr. Munson for treatment on January 4, 2012. (Tr. 381.) Dr. Munson noted that Plaintiff had three prior epidural injections that failed to provide relief. (*Id.*) He ordered further diagnostic testing and stated that she could not return to work until the studies were completed. (Tr. 381-82.)

On March 8, 2012, Dr. Munson noted that an MRI revealed a large herniated disc causing stenosis at L5-S1. (Tr. 373.) He also stated that "conservative measures failed to be improving her" and thus recommended further decompression and fusion surgery. (*Id.*) The back surgery was performed on April 9, 2012. (Tr. 340-42.) Plaintiff improved and ultimately returned to work. (Tr. 369-70.) However, Plaintiff returned to Dr. Munson in October of 2012, complaining of back pain and tingling in her left leg. (Tr. 367-

68.)  Plaintiff reported to Dr. Munson that she regretted returning to work, but did

so for financial reasons.  (Tr. 367.)  On October 22, 2012, Dr. Munson reported

that he "would be happy to return her to work. [He] d[id] not see any problems

structurally that would contraindicate employment."  (*Id*.)  Dr. Munson prescribed

her Nuerontin, hoped that the medication would make her feel better, and

"allow[ed] her to return to work if she d[id] feel better."  (*Id*.)

Plaintiff returned to work.  However, on January 18, 2013, Plaintiff returned

to Dr. Munson with back pain and persistent left leg symptoms.  (Tr. 366.)  At that

time, she provided Dr. Munson with a note from her place of employment

requesting light duty recommendations.  (*Id*.)  Plaintiff returned to Dr. Munson on

April 22, 2013, with continued back and leg pain.  (Tr. 365.)  Plaintiff reported that

she continued to have "circumferential discomfort and symptoms in her leg,

numbness and pain."  (*Id*.)  Dr. Munson opined, "I have put her on light duty at

her request.  No lifting, standing less than 15 minutes and sitting less than 15

minutes."  (*Id*.)  Dr. Munson continued to treat Plaintiff, reporting Plaintiff's

continued pain and referring her to a pain management doctor since no further

surgical treatment was warranted.  (Tr. 501.)

The ALJ accorded little weight to the restrictions set forth by Dr. Munson on

April 22, 2013.  (Tr. 34.)  The undersigned finds that the ALJ's reasons for

discounting Dr. Munson's opinions are not supported by substantial evidence.

Although somewhat unclear, it appears the ALJ believed that Dr. Munson only

13

provided the restrictions to Plaintiff because she requested them.  No evidence supports this conclusion.  While Dr. Munson did explain that he "put her on light duty at her request," a (maybe more) reasonable interpretation of this statement is that Dr. Munson agreed with the light duty request after he conducted an independent examination of Plaintiff.[2]  Further, nothing suggests that Plaintiff requested the specific restrictions set forth by Dr. Munson: "[n]o lifting, standing less than 15 minutes and sitting less than 15 minutes."  (Tr. 365.)  Without further explanation, the Court cannot conclude substantial evidence supports the ALJ's reasoning in this regard.

Moreover, it is undisputed that Plaintiff returned to work after her rescinded, amended onset date of February 8, 2012 and after her April 9, 2012 back surgery.  Plaintiff subsequently returned to Dr. Munson with continued complaints of back and leg pain, and stopped working on April 3, 2013, her original onset date.  It is unclear, then, how Dr. Munson's optimism about Plaintiff's work ability in 2012 contradicts the restrictions he rendered in April 2013, after her unsuccessful attempt to continue working.  The undersigned also finds it important to note that Dr. Munson's October 2012 notes may not have garnered much weight if the ALJ had granted Plaintiff's request to reinstate her original onset date of April 3, 2013.  Finally, that Plaintiff wanted to return to work in 2014

---

[2] It also appears that the note requesting limitations came from Plaintiff's place of employment rather than from Plaintiff herself.

does not discredit Dr. Munson's opinions about what Plaintiff could actually perform at that time.

The ALJ failed to clearly explain Plaintiff's onset date and failed to articulate good cause reasons supported by substantial evidence for discrediting Dr. Munson's opinions.  These issues are dispositive and, therefore, it is unnecessary for the Court to address Plaintiff's remaining argument that the ALJ should have ordered a consultative psychological examination or recontacted Dr. Lozano for an opinion of mental limitations.  *See, e.g., Alexander v. Comm'r of Soc. Sec.*, No. 8:13-cv-1602-T-GJK, 2014 WL 4211311, at *3 n.3 (M.D. Fla. Aug. 26, 2014) (citing *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (stating that on remand the ALJ must reassess the entire record)).  However, on remand, the ALJ should also be directed to reconsider Plaintiff's mental limitations.

### III.    Conclusion

Accordingly, it is respectfully **RECOMMENDED** that:

1.    The Commissioner's decision be **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDED** with instructions to the ALJ to: (a) reconsider Plaintiff's onset date and clearly explain his onset date determination; (b) reconsider the opinions of Dr. Munson, explain what weight they are being accorded, and the reasons therefor; (c) reconsider Plaintiff's mental limitations, if necessary; and (d) conduct any further proceedings deemed appropriate.

2.    Plaintiff's counsel be advised that, in the event benefits are awarded

on remand, any § 406(b) or  § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in Case No.: 6:12-mc-124-Orl-22 (*In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*).  The Court's Order on this Report and Recommendation should not be interpreted as extending the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

3.      The Clerk of Court be directed to enter judgment accordingly and close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on May 7, 2018

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Roy B. Dalton, Jr.
United States District Judge

Counsel of Record

16